# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 4:16-CR-00019-19 |
| v. | : | (Judge Brann) |
| RANDY THOMPSON, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### JANUARY 17, 2018

## I. BACKGROUND

On February 11, 2016, a federal grand jury sitting in Williamsport, Lycoming County, Pennsylvania returned a superseding indictment that charged Defendant Randy Thompson ("Defendant") with conspiring to distribute 100 grams or more of heroin, crack cocaine, and buprenorphine in Lycoming and Columbia Counties, Pennsylvania. According to the superseding indictment, the charges stemmed from Defendant's involvement in a drug distribution network whose agents originated in Philadelphia, Pennsylvania and utilized rental cars and other forms of transportation to infiltrate various locales along the Interstate 80 corridor between Bloomsburg, Columbia County, Pennsylvania and Williamsport.[1]

---

[1] ECF No. 25.

Defendant was thereafter arraigned before United States Magistrate Judge William I. Arbuckle, III, and entered a plea of not guilty.[2]

Following that arraignment, Magistrate Judge Arbuckle held a comprehensive detention hearing as contemplated by 18 U.S.C. § 3142(f).[3] At the conclusion of the detention hearing, Magistrate Judge Arbuckle determined that the Defendant had failed to overcome the statutory presumption of detention set forth at 18 U.S.C. § 3142(e)(3)(A) for crimes warranting a maximum term of imprisonment of ten years or more under the Controlled Substances Act and ordered that the Defendant remain detained under the original detention order dated January 21, 2016.[4] Defendant thereafter sought review of his detention before this Court,[5] and, following my denial of his Motion to Vacate the Order of Detention,[6] before the United States Court of Appeals for the Third Circuit.[7] By Order dated August 8, 2016, the Third Circuit denied Defendant's Motion to be released from custody.[8]

---

[2] ECF No. 52.
[3] ECF No. 52. *See also* February 12, 2016 Hearing Transcript (ECF No. 292).
[4] 4:16-cr-00021, ECF No. 12.
[5] ECF No. 231.
[6] ECF Nos. 257 & 258.
[7] ECF No. 266.
[8] ECF No. 298.

On November 10, 2016, the grand jury returned a Second Superseding Indictment, repeating Defendant's involvement in this vast drug conspiracy.[9] Pursuant to Court leave,[10] Defendant filed a Second Motion for Bail on August 16, 2017.[11] Following a hearing on said motion, Magistrate Judge Arbuckle ordered that Defendant remain detained.[12] Defendant renewed this motion on December 22, 2017, and, after holding a hearing, Magistrate Judge Arbuckle ordered Defendant released on January 8, 2018.[13] The Government filed a Motion to Revoke the Release Order, and following a hearing on this issue held on January 16, 2018, the matter is ripe for disposition.[14]

**II.   LAW**

When a defendant is released by order of a Magistrate Judge, as is the case here, the "Government may file with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."[15] In *United States v. Delker*, the United States Court of Appeals for the Third Circuit, explained that the district court's review of such a detention order is a *de novo*, independent determination.[16] The district court should ultimately decide the propriety of

---

[9]  ECF No. 362.
[10] ECF No. 704.
[11] ECF No. 707.
[12] ECF No. 724. *See also* October 3, 2017 Hearing Transcript (ECF No. 798).
[13] ECF No. 794.
[14] ECF No. 795.
[15] 18 U.S.C. § 3145(a)(1).
[16] 757 F.2d 1390 (3d Cir. 1985).

detention without deference to the magistrate judge's conclusion, should not rely solely on the findings and recommendations of the magistrate, but should provide its own findings of fact and statement of reasons for its ultimate decision.[17] To that end, the district court is permitted under statute to hold an independent evidentiary hearing.[18]

The Bail Reform Act of 1984 provides that a defendant must be released pending trial unless the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."[19] If there is probable cause to believe that the defendant committed an offense for which the Controlled Substances Act prescribes a maximum term of imprisonment of ten or more years, however, a rebuttable presumption arises that no combination of conditions will ensure the defendant's appearance or assure the community's safety.[20] Here, Defendant was indicted by a grand jury for conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, and distribution/possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1). Based on prior felony drug distribution convictions, Defendant faces a maximum term of life imprisonment and a 10-year mandatory minimum term for the offenses charged in

---

[17] *United States v. Fortna*, 769 F.2d 245 (5th Cir. 1985).
[18] *Delker*, 757 F.2d at 1394.
[19] 18 U.S.C. § 3142(e)(1).
[20] *See* § 3142(e)(3)(a).

the second superseding indictment.[21] Accordingly, there is a rebuttable presumption that no conditions or combinations of conditions will ensure the safety of the community and Defendant's appearance as required.[22]

In order to rebut this presumption of detention, "[t]he defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community."[23] "The quantum of evidence required to rebut the presumption is not high. Rather, the defendant need only come forward with credible evidence conflicting with the presumption."[24] If the defendant is able to meet this burden of production, the government bears the ultimate burden of persuasion.[25] The government must then establish that the defendant poses a risk of flight by a preponderance of the evidence and that the defendant poses a danger to the community by a clear and convincing evidence standard.[26] For determining the appropriateness of detention, Section 3142(g) of the Bail Reform Act, entitled "Factors to Be Considered," provides as follows:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as

---

[21] See 21 U.S.C. §§ 841(b)(1)(B) (increasing the maximum sentence to life in prison and the mandatory minimum sentence to 10 years in prison, in the event of a defendant's prior felony drug conviction).
[22] 18 U.S.C. § 3142 (e)(3)(A).
[23] *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).
[24] *Id.*
[25] *See United States v. Perry,* 788 F.2d 100, 114–15 (3d Cir. 1986).
[26] *See United States v. Himler,* 797 F.2d 156, 161 (3d Cir. 1986) (risk of flight standard); *Perry,* 788 F.2d at 114 (dangerousness standard).

required and the safety of any other person and the community, take into account the available information concerning—

(1)   the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)   the weight of the evidence against the person;

(3)   the history and characteristics of the person, including—

   (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

**III. ANALYSIS**[27]

The court will address each of the above factors as they relate to the instant determination of Defendant's dangerousness and risk of flight.

A. <u>Danger to the Community</u>[28]

(1) The Nature and Circumstances of the Offense Charged

The first factor set forth in Section 3142(g) requires the court to consider the nature and circumstances of the offense charged. As noted above, Defendant here is charged with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, and distribution/possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1). These offenses stem from

---

[27] Coloring Defendant's repeated requests for bail is the length of his pre-trial detention and his opposition to his co-defendant's motions to continue trial beginning in November 2016. First, in granting each of those continuances, I noted Defendant's non-concurrence, but found that, because the case is "so unusual or so complex, due to the number of defendants and the nature of the prosecution," the ends of justice are served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. *See* ECF Nos. 319, 403, 525, 647, 716, 742, and 790 (quoting 18 U.S.C. § 3161(h)(7)(A)). Second, while the Third Circuit has recognized that "at some point due process may require a release from pretrial detention," *see United States v. Accetturo*, 782 F.2d 382, 388 (3d Cir. 1986), I have considered the "length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity," and find, among other things, that the complexity of the case and lack of fault in adding to its complexity weigh in favor of finding no due process violation. While Defendant faults the Government for creating complexity by adding new defendants, I am in agreement that these additions instead reflect the complex nature of the instant drug trafficking organization and its utilization of different customer phones. *See* October 3, 2017 Hearing Transcript (ECF No. 799), at 8:16-21.

[28] I first find that, although the testimony of Defendant's sister is probative of his general history and characteristics, it is insufficient to rebut the presumption of dangerousness, which requires a showing that defendant's criminality is a thing of the past. This testimony was not probative of that issue. Such evidence is crucial to an effective rebuttal of the statutory presumption. *See United States v. Chagra*, 850 F.Supp.354, 358 (W.D.Pa. 1994).

Defendant's alleged participation in a vast drug distribution network operating between Philadelphia and Bloomsburg and Williamsport. Specifically, the Government has proffered that Defendant was a critical component of a drug distribution operation that had its base at the Grandview Motel in Linden, Lycoming County, Pennsylvania during late January 2016. From this base of operation, Defendant and his fellow co-conspirators would meet drug customers at various public locations throughout the greater Williamsport area and engage in drug exchanges from an orange pickup truck and another vehicle.[29] Given the seriousness of the charged offenses, their factual underpinnings, and the substantial mandatory minimum which Defendant faces given his criminal history, this first factor weighs in favor of continued detention.[30]

(2) The Weight of the Evidence Against Defendant

The second factor in Section 3142(g)—the weight of the evidence against Defendant—is heavily disputed by the parties. Specifically, while the Government adduces the evidentiary strength of calls intercepted on the cell phone referred to as

---

[29] ECF No. 796 at 5.
[30] *See United States v. Perry*, 788 F.2d 100, 111 (3d Cir. 1986); *United States v. Rice*, Criminal Action No. 17-CR-1450, 2017 WL 6349372, at *7 (W.D.Pa. Dec. 13, 2017)(Conti, C.J.)(finding that, because the offense charged is a very serious drug offense which carried with it a significant statutory mandatory minimum term of imprisonment, this initial factor weighed in favor of detention); *United States v. Santiago-Pagan*, Criminal Action No. 08-CR-0424, 2009 WL 1106814, at *6 (M.D.Pa. Apr. 23, 2009)(Conner, J.)(finding that, because the defendant was charged with conspiracy, distribution, and possession with the intent to distribute a significant quantity of narcotics, this initial factor weighed in favor of detention).

Target Telephone #7, Defendant vociferously contends that the voice intercepted on those calls is not his own.[31] To address this issue, Magistrate Judge Arbuckle, at a previous hearing on October 3, 2017, analyzed the weight of the evidence without consideration of these recorded calls.[32] Following the same vein of analysis, I nevertheless find that, even excluding evidence of these calls, the evidence against Defendant is compelling and weighs in favor of continued detention.

First, I note the Grandview Motel component of this vast operation was characterized by its use of an orange Chevy Avalanche to meet with drug customers throughout the Linden and Williamsport areas. Indeed, this distinctive vehicle is referenced in multiple calls intercepted by law enforcement authorities.[33] Defendant does not dispute that this vehicle was registered to him.[34] Rather, he argues that, pursuant to an Affidavit filed in support of Defendant's arrest warrant, he was not in possession of the vehicle.[35] This argument, however, overlooks both surveillance evidence of Defendant operating the vehicle and his ultimate arrest while operating the vehicle.[36]

---

[31] ECF No. 708, at 3.
[32] *See* October 3, 2017 Hearing Transcript (ECF No. 798) at 3:18-23.
[33] *Id.* at 21:17-20.
[34] *Id.* at 30:18-23.
[35] *Id.*
[36] *Id.* at 26:5-17.

Second, there exist text messages from a cell phone recovered from Defendant's person when he was arrested by FBI investigators, which the Government avers implicate his involvement in drug trafficking activity.[37] In these messages, Defendant discussed the need for "Mont Bro," believed to be co-defendant Lamont Johnson, to refrain from discussion of "trapping" around an unidentified female.[38] "Trapping" is advanced by the Government as a euphemism for operating a telephone that receives customer calls for heroin and other drugs.[39] These messages also contain references to the need for a "strap," advanced by the Government as a strapped up quantity of money, and "work," advanced by the Government as "drugs, product for sale."[40] While Defendant contests the Government's interpretation of "strap" and related lingo,[41] (1) the corroboration provided by co-defendant Kalif English concerning the definition of "trapping" as advanced by the Government at the hearing, (2) Lamont Johnson's guilty plea to drug trafficking while in Williamsport, and (3) the full context of conversations concerning the need for a strap tend to belie those contentions.[42]

---

[37] ECF No. 796, at 10.
[38] *Id.* at 10. *See also* October 3, 2017 Hearing Transcript (ECF No. 798) at 24:7-15.
[39] *Id.*
[40] *Id.* at 23:18-21; 24:25—25:4.
[41] *Id.* at 31:4-10.
[42] Indeed, in an Extraction Report for the 818 phone number entered into evidence at the hearing, the conversation concerning the need for a "strap" includes (1)"Montbro" vowing to hit up some of the people from whom he got some last time, and (2) Defendant asking if he "got fam up here." At the hearing held on January 16, 2018, the Government argued that the full context of this conversation contradicts Defendant's definition of "strap" as a condom.

(3) The History and Characteristics of Defendant

Factor three in Section 3142(g)—the history and characteristics of the Defendant—similarly weighs in favor of continued detention. First, I am in agreement with the Government that Defendant's criminal history indicates a propensity to participate in the drug trade. Specifically, on March 27, 2002, the Defendant was sentenced in the Philadelphia Municipal Court on the charge of possession with intent to distribute a controlled substance and was placed on probation for two years.[43] Almost two years later, on March 22, 2004, he was again sentenced in the Philadelphia Court of Common Pleas for possession with intent to distribute a controlled substance and was ordered to serve a five-to-ten year term in state prison.[44] Further vitiating against release in this circumstance is the fact that Defendant was arrested on this second drug charge during the two-year probation term imposed on his earlier drug charge.[45]

Second, while Defendant presented the testimony of his sister Dorothy Thompson at the October 3, 2017 hearing before Magistrate Judge Arbuckle to demonstrate familial and community ties,[46] I note that the legitimacy of his pre-arrest employment record is cause for concern and diminishes this evidence of ties to the Philadelphia community. Specifically, while Defendant cites his pre-arrest

---

[43] ECF No. 796-1.
[44] *Id.*
[45] *Id.*
[46] *See also* October 3, 2017 Hearing Transcript (ECF No. 798) at 4:13—11:13.

work as an electrician to a Pretrial Services Officer, the Government has previously advanced that the Defendant last worked for Justice Electric in the first quarter of 2014 and earned a mere $3,321.00.[47] Those records also show that he worked solely for Jollies Lounge in Philadelphia in 2015, earning $983.21 in the second quarter and $683.41 in the fourth quarter of that year.[48] Defendant has failed to substantiate further employment. Further, while Defendant oft references his interest in a Philadelphia bar, return to this profession upon release would be troubling given Defendant's previous state DUI charges in October 2011 and September 2015.[49]

Therefore, despite testimony of Defendant's sister demonstrating some community and family ties,[50] I am unpersuaded that his history and characteristics allow release given his previous felony drug convictions, his sporadic record of employment, his prior DUI charges, and previous failure to abide by terms of pre-trial release. This factor therefore weighs in favor of continued detention.

(4) The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Defendant's Release

Finally, I must consider the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. This factor

---

[47] ECF No. 241, at 11.
[48] *Id.*
[49] ECF Nos. 796-1; 796-2.
[50] Community ties have limited weight in the context of assessing whether a defendant presents a danger to the community. *Delker*, 757 F.2d at 1396.

essentially requires the court to assess the totality of the evidence presented to predict Defendant's likelihood of engaging in drug trafficking if released.[51] In *United States v. Santiago-Pagan*, the Honorable Christopher C. Conner, Chief Judge of this Court, found that:

> Defendant's indictment for conspiracy, distribution, and possession of a large quantity of narcotics cuts strongly against his motion for release pending trial. The seriousness of the crimes alone, in the absence of significant countervailing considerations, allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released.[52]

Like the Defendant in *Santiago-Pagan*, Defendant here is charged with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, and distribution/possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) as part and parcel of a vast drug conspiracy. Moreover, given his prior drug distribution convictions, I find circumstances demonstrating a likelihood of recidivism which cuts strongly against his release pending trial.

I also note that Defendant's criminal history reveals an adult conviction in Philadelphia for carrying firearms without a license for which he was sentenced on February 25, 2002 to a four-year probation term. Defendant had previously been adjudicated delinquent on September 28, 2000, at 18 years old, for carrying

---

[51] *Perry*, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior[,]" i.e., a prediction about "the likelihood that the defendant will, if released, commit one of the proscribed federal offenses.").

[52] *Santiago-Pagan*, 2009 WL 1106814, at *7 (citing *United States v. Carter,* 916 F.Supp. 193, 195 (N.D.N.Y.1996) & *United States v. Duncan,* 897 F.Supp. 688, 691 (N.D.N.Y.1995)).

firearms without a license.[53] While Defendant was not in possession of a firearm when he was apprehended in the instant case, I nevertheless note that firearms were recovered during the investigation of and stemming from this conspiracy.[54] Based on this conviction and adjudication, I am in agreement with the Government that Defendant's history demonstrates "an affinity for firearms" which poses a societal danger.[55] This factor therefore cuts against pre-trial release.[56]

Upon consideration of the evidence and proffer advanced by Defendant, I find that Defendant has failed to rebut presumption of continued danger to the community. Furthermore, even if defendant had rebutted the presumption, the Government has nevertheless satisfied its burden of persuading the Court by clear and convincing evidence that Defendant would continue to engage in drug trafficking if released pending trial and there is no condition or combination of conditions that would ensure the safety of the community upon his release. Detention pending trial is therefore appropriate on this ground alone.

B. Risk of Flight

---

[53] ECF No. 796 at 12-13.
[54] *See also* October 3, 2017 Hearing Transcript (ECF No. 798) at 31:22-24.
[55] *See United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000)(noting the connection between gun violence and the safety of our communities).
[56] *See United States v. Evans*, Criminal Action No. 17-CR-207, 2018 WL 317958, at *3 (W.D.Pa. Jan. 8, 2018)(Conti, C.J.)(finding that this factor weighed in favor of detention given the defendant's past possessions of firearms and his current charge).

"The purpose of a Section 3142(e) risk of flight determination . . . is to secure the appearance of the accused at trial."[57] To secure pre-trial detention, the government must demonstrate by a preponderance of the evidence that no combination of conditions will ensure defendant's appearance at trial.[58] Section 3142 lessens the government's burden of persuasion with respect to the risk of flight because "flight to avoid prosecution is 'particularly high among those charged with major drug offenses;' " thus, there is a strong probability that "no form of conditional release will be adequate to secure [a defendant's] appearance."[59] In making the risk of flight determination, judicial officers are guided by the factors set forth in Section 3142(g).[60]

Here, as demonstrated above, I have considered the factors contained within Section 3142(g) as they relate to this Defendant. Although Defendant has produced some evidence,[61] through the testimony of his sister, to demonstrate community ties to the Philadelphia area and past employment, I nevertheless conclude that the Government has established, by a preponderance of the evidence, that no condition or combination of conditions would ensure his attendance at future court proceedings. First, concerning the nature and circumstances of the

---

[57] *United States v. Himler*, 797 F.2d 156, 161–62 (3d Cir. 1986).
[58] *Himler,* 797 F.2d at 161.
[59] *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986) (quoting S. REP. NO. 98–225, at 7 & n. 18).
[60] *Himler*, 797 F.2d at 161.
[61] *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985).

offense charged, I note that Defendant is subject to a mandatory minimum term of 10 years and potential maximum term of life imprisonment.[62] Moreover, Defendant's history and characteristics include a previous failure to appear in the Court of Common Pleas of Bucks County for his preliminary hearing on January 13, 2016 after multiple summonses were issued for state DUI charges.[63] According to NCCIC criminal history records and Unified Judicial System of Pennsylvania records, Defendant also has a history of using aliases such as Randy Matthews, Jamar Thompson, and Alonzo Thompson.[64] Consideration of these facts in light of the factors outlined in Section 3142(g) demonstrates that no combination of conditions will reasonably ensure Defendant's appearance at trial. Detention pending trial is therefore similarly appropriate on this ground.

## IV. CONCLUSION

Based on the foregoing reasoning, the Court finds that no condition or combination of conditions will reasonably assure defendant's appearance at trial and the safety of any other person and the community. Therefore, following a *de novo*, independent determination with regard to this particular Defendant, I find

---

[62] *Santiago-Pagan*, 2009 WL 1106814, at *8 (citing *United States v. Cook*, 530 F.Supp.2d 195, 198 (D.D.C. 2008) (rejecting defendant's bail motion when defendant demonstrated strong community ties and stable employment but faced a potential life sentence for distributing narcotics under 21 U.S.C. § 841).
[63] ECF No. 796, at 13-14.
[64] *Id.* at 13-14; 16.

that detention pending trial is warranted.  The Motion of the United States for Revocation of Release Order (ECF No. 795) is granted.

At the upcoming February 20, 2018 status conference, this case will be scheduled for a **date certain trial**.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge